UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAUREEN L. BEAUVAIS,<br>Plaintiff, | ) | |
| v. | ) | C.A. No. 04-403T |
| CITIZENS FINANCIAL GROUP, INC., AND LIBERTY LIFE ASSURANCE COMPANY OF BOSTON<br>Defendants. | ) | |

**DEFENDANT LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Liberty Life Assurance Company of Boston ("Liberty Life"), moves pursuant to Fed. R. Civ. P. 56 for summary judgment on Plaintiff's Complaint on the grounds that there are no material facts in dispute and Liberty Life is entitled to judgment as a matter of law. In support of its motion, Defendant submits a memorandum of law, a statement of undisputed facts, and the Affidavit of Paula McGee. As set forth in detail in its supporting memorandum, Defendant is entitled to judgment on Plaintiff's Complaint, because the decision to deny Plaintiff's appeal of her long-term disability benefits was reasonable and was not "arbitrary and capricious." Accordingly, Defendant respectfully submits that summary judgment should enter on its behalf on Plaintiff's Complaint.

**Request for Oral Argument**

Defendant respectfully requests oral argument on this motion to the extent it would assist the Court's consideration of the administrative record and the legal issues presented.

Respectfully submitted,

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON

By its attorneys,

Anthony J. DiOrio (RWP)

Anthony J. DiOrio, R.I. Bar No. 3419
JACKSON LEWIS LLP
127 Dorrance Street
Providence, RI 02903
(401) 454-7700 telephone
(401) 454-8855 fax

Andrew C. Pickett
(Admitted *Pro Hac Vice*)
Richard W. Paterniti
(Admitted *Pro Hac Vice*)
JACKSON LEWIS LLP
75 Park Plaza
Boston, Massachusetts 02116
(617) 367-0025

DATED: June 22, 2005

**CERTIFICATE OF SERVICE**

This hereby certifies that on this 22nd day of June, 2005, a copy of the foregoing document was served upon Plaintiff's attorney, Monica Horan, Esq., 393 Armistice Boulevard, P.O. Box A, Pawtucket, RI 02861, and upon counsel for Citizens Financial Group, Inc., Joseph D. Whelan, Esq., Hinckley, Allen & Snyder, LLP, 1500 Fleet Center, Providence, RI 02903, via overnight mail.

Anthony J. DiOrio (RWP)
Jackson Lewis LLP

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAUREEN L. BEAUVAIS, Plaintiff, | ) | |
| v. | ) | C.A. No. 04-403T |
| CITIZENS FINANCIAL GROUP, INC., AND LIBERTY LIFE ASSURANCE COMPANY OF BOSTON Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Description of Motion .......... 1

Overview of Facts .......... 2

Issues .......... 4

1. Was Liberty's Life decision to deny Plaintiff's claim for LTD benefits reasonable and not "arbitrary and capricious"? .......... 4

Points and Authorities .......... 4

I. Summary Judgment Standard .......... 4

II. Liberty Life Is Entitled To Summary Judgment On Plaintiff's Claim For LTD Benefits Because Plaintiff Did Not Meet The Requirements For Such Benefits Under The LTD Policy .......... 5

A. Liberty Life's Determination Of Plaintiff's Eligibility For Long-Term Disability Benefits Is Reviewed Under An Arbitrary And Capricious Standard .......... 5

B. Liberty Life's Decision To Deny Plaintiff's Claim For Ltd Benefits Was Not "Arbitrary And Capricious" .......... 7

1. The Initial Review Of Plaintiff's Std Claim By Liberty Life Was Reasonable .......... 8

2. Liberty Life's Review Of Plaintiff's Appeal Of The Initial Denial Of Benefits Was Reasonable ........ 14

3. Liberty Life's Review Of Plaintiff's Second Appeal Of Her Denial Of Benefits ........ 16

4. Plaintiff Did Not Meet The Elimination Period Under The LTD Policy ........ 18

5. Overall Liberty Life's Decision Was Reasonable ........ 19

III. Conclusion ........ 20

Defendant Liberty Life Assurance Company of Boston ("Liberty Life" or "Defendant") moves for summary judgment in its favor on the claims asserted against it by Plaintiff on the grounds that there are no material facts in dispute and that it is entitled to judgment as a matter of law. This memorandum, Liberty Life's Statement of Undisputed Material Facts, and the Affidavit of Paula McGee are submitted in support of that motion.

## DESCRIPTION OF MOTION

Defendant Liberty Life moves for summary judgment on Plaintiff's Complaint brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132, for long-term ("LTD") disability benefits under the relevant disability plan/policy.[1] Defendant requests that this Court grant its motion for summary judgment on Plaintiff's claim against it.

## OVERVIEW OF FACTS

Plaintiff, an Assistant Vice President, Loan Process Manager at Citizens Financial Group, Inc. ("Citizens") filed an application for disability benefits in or around February of 2003 at the time she underwent a thyroidectomy. As part of her employment with Citizens, Plaintiff was offered coverage under a self-funded short-term disability plan ("STD Plan"). Pursuant to the Group Disability Risk Management Agreement between Citizens and Liberty Life, Liberty Life provided claims management to Citizens on an administrative services basis only, and Citizens had authority to make final decisions on

---

[1] Plaintiff indicated in her Complaint that her claims were brought under 29 U.S.C. §1132. Her counsel has informed Defendant's counsel that Plaintiff's claims are only claims for benefits under 29 U.S.C. §1132(a)(1)(B) for denial of benefits. Plaintiff's counsel also notified Defendant's counsel on June 14, 2005 that Plaintiff would withdraw any claim against Liberty Life for short-term disability ("STD") benefits. As a result, Defendant understands that Plaintiff is pursuing only a claim for LTD benefits as against Liberty Life.

disputed claims under the STD Plan and was responsible for paying the benefits. With respect to the long-term disability plan ("LTD Plan"), Liberty Life insured LTD benefits under a group disability income policy ("LTD Policy") issued to Citizens. Under this policy, Liberty Life had discretionary authority to construe the terms of the policy and make decisions on claims.

Upon receipt of Plaintiff's claim for STD benefits, Liberty Life conducted a full and fair review of her claim. During the review process, Liberty Life requested and received medical records from Plaintiff's treating physicians, documents relating to Plaintiff's job duties from Citizens, claims forms completed by Plaintiff and her treating physicians relating to her conditions, as well as reviews by a reviewing nurse and a reviewing physician, and a surveillance of Plaintiff's activities. In particular, in July, 2003, Liberty Life requested and received a review by an independent physician specializing in orthopedics who concluded that Plaintiff's medical records did not support restrictions or limitations beyond June 13, 2003, based on Plaintiff's recovery from her thyroidectomy and the fact that the subsequent conditions that she complained of, including cervical degenerative joint disease and cervical radiculitis, did not render her disabled and unable to return to work. As a result, Liberty Life notified Plaintiff that her benefits for short-term disability were no longer payable as of June 13, 2003, because she had sufficiently recovered and did not meet the definition of "disabled" under the plan.

Plaintiff appealed this decision. In her appeal, Plaintiff described her medical conditions and provided copies of additional medical records relating to other conditions allegedly suffered by Plaintiff, including alleged vertigo and depression. Upon receipt of this correspondence, Liberty Life conducted a further review of Plaintiff's claim. As part

of this second review, Plaintiff's claim was reviewed by another nurse at Liberty Life, as well as by a physician specializing in internal medicine. These reviews included reviews of Plaintiff's entire claims file, including those records submitted by Plaintiff with her appeal letter. Ultimately, the reviewing physician concluded that Plaintiff's records did not support limitations relating to Plaintiff's alleged depression and dizziness.

In addition, Liberty Life requested that the orthopedic physician who originally reviewed Plaintiff's claim review the additional medical records submitted by Plaintiff. That physician concluded that the new records did not change his opinion regarding Plaintiff's lack of restrictions and limitations relating to her cervical condition. As a result, Liberty Life concluded that Plaintiff's conditions did not support a claim for benefits beyond June 13, 2003. As such, Liberty Life recommended to Citizens that it uphold the original denial of this claim.

Following this decision and Citizens' notification to Plaintiff of its decision to uphold the denial, Plaintiff made a second request for a review of the decision to deny her benefits beyond June 13, 2003. With her second request, Plaintiff enclosed additional medical records relating to conditions that she allegedly developed during the claims process, including a rotator cuff tear, knee pain, and an abscess on her neck. In order to evaluate Plaintiff's second request for review, Liberty Life requested and received a review by an independent physician specializing in the back and spine. This physician also concluded that Plaintiff's conditions did not support restrictions or limitations after June 13, 2003. As such, Liberty Life recommended upholding the denial of benefits beyond June 13, 2003. Citizens accepted this recommendation and notified Plaintiff of same.

Because Plaintiff did not satisfy the elimination period for LTD benefits, which was 180 days and which would have expired on August 22, 2003, Plaintiff's claim for long-term disability benefits was also denied.

## ISSUES

1. Was Liberty Life's decision to deny Plaintiff's claim for LTD benefits reasonable and not "arbitrary and capricious"?

## POINTS AND AUTHORITIES

### I. Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Fed. R. Civ. P. 56 advisory committee's note), rev'd and remanded on other grounds, 976 F.2d 77 (1st Cir. 1992); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The standard for summary judgment is different in denial of benefits cases under ERISA than in other civil cases. The First Circuit has explained the standard in these cases as follows: "In an ERISA benefit denial case, trial is usually not an option: in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." Leahy v. Raytheon Company, 315 F.3d 11, 17-18 (1st Cir. 2002).

Applying this standard in the instant case, Plaintiff's claims fail as a matter of law, for the reasons set forth below.

## II. Liberty Life Is Entitled to Summary Judgment On Plaintiff's Claim For LTD Benefits Because Plaintiff Did Not Meet The Requirements For Such Benefits Under the LTD Policy

Summary judgment should be granted in favor of Liberty Life on Plaintiff's claim for LTD benefits, because Liberty Life's determination of Plaintiffs claim for LTD benefits was not "arbitrary and capricious." The information available to Liberty Life at the time it considered Plaintiffs claim demonstrates that its decision with respect to Plaintiffs claim was reasonable and was consistent with the LTD policy.

### A. Liberty Life's Determination of Plaintiff's Eligibility for Long-Term Disability Benefits is Reviewed Under An Arbitrary and Capricious Standard

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the United States Supreme Court held that "[c]onsistent with established principles of trust law, we hold that a denial of benefits under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan." Firestone, 489 U.S. at 115. The law in the First Circuit is clear: "[w]here a benefits plan grants discretionary authority to the plan administrator, [the First Circuit Court of Appeals] review[s] this administrator's decisions to determine whether they are arbitrary and capricious." Sullivan v. Raytheon Co., 262 F.3d 41, 50 (1st Cir. 2001), cert. denied, 534 U.S. 1118 (2002) (citing Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 418 (1st Cir. 2000) and Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998)). In this case, such discretionary language is present. The Plan expressly states:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

(See AR at 13.) Such language provides a clear grant of discretionary authority to Liberty Life by allocating to it the right to make factual findings, to determine eligibility for benefits, and/or to interpret the terms of the Plan. See Terry, 145 F.3d at 37 (holding that Plan in that case properly granted discretionary authority to Plan Administrator, because it allocated to the Company the right to find necessary facts, determine eligibility for benefits, and interpret the terms of the Plan).

The arbitrary and capricious standard requires this Court to determine only whether an administrator's decision is plausible in light of the record as a whole, or, put another way, whether the decision is within the administrator's authority, reasoned and supported by substantial evidence on the record, that is, evidence reasonably sufficient to support a conclusion.[2] See Pari-Fasano v. ITT Hartford Life & Accid. Ins. Co., 230 F.3d 415, 419 (1st Cir. 2000); Sullivan v. Raytheon Corporation, 262, F.3d 41, 50 (1st Cir. 2001).

"Moreover, the existence of contradictory evidence does not, in itself, make the administrator's decision arbitrary." Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 30 (1st 2001). Under this standard, "'a court is not to substitute its judgment for that of the [decision-maker].'" Terry v. Bayer Corporation, 145 F.3d 28, 40 (1st Cir. 1998). The deciding administrator's decision will be upheld if it is reasonable. See id.

---

[2] Under First Circuit law, even if Liberty Life, or any claims fiduciary, pays the disability benefits from its own assets, the decision by Liberty Life, or any claims fiduciary, is still reviewed for reasonableness under the arbitrary and capricious standard. See Pari-Fasano v. ITT Hartford Life & Accid. Ins. Co., 230 F.3d 415, 418-419 (1st Cir. 2000); Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999).

Because this standard emphasizes reasonableness, the standard recognizes "that in order to find that an insurer had abused its discretion under the contract, [a court] would have to conclude that the insurer's eligibility determination was unreasonable in light of the information available to it." Pari-Fasano, 230 F.2d at 419.

### B. Liberty Life's Decision to Deny Plaintiff's Claim for LTD Benefits Was Not "Arbitrary and Capricious"

The Administrative Record in this case contains ample support for the decision to deny Plaintiff's receipt of LTD benefits. The extensive medical evidence collected as part of Liberty Life's review of Plaintiff's claim for STD benefits not only reasonably supported a determination that Plaintiff was not entitled to a continuation of STD benefits, but compelled such a determination. Based on this evidence and the LTD policy itself, which required that Plaintiff exhaust her STD benefits before being eligible to receive LTD benefits, Liberty Life was required to deny Plaintiff's claim for LTD benefits.

Plaintiff clearly did not meet the definition of "disabled" contained in Citizen's STD policy. Plaintiff's claim for benefits was reviewed on at least five occasions, including four independent reviews by physicians. Throughout that time, Plaintiff also provided supplemental medical records/reports to Liberty Life and Citizens. All of these records and reviews were considered as part of Liberty Life's recommendation that Citizens deny Plaintiff continued STD benefits. As a result of the substantial time and resources expended on the reviews of Plaintiff's claim, Liberty Life was able reasonably to conclude that Plaintiff did not qualify for STD benefits. In light of the extensive medical information submitted to Liberty Life, its decision was imminently reasonable and was based on the STD Plan.

### 1. **<u>The Initial Review of Plaintiff's STD Claim by Liberty Life Was Reasonable</u>**

On or about February 14, 2003, Plaintiff applied for short-term disability benefits because she planned to be out of work for approximately two weeks following a thyroid surgery scheduled for February 24, 2003. (Complaint, ¶¶ 5-6; AR at 327, 329). As part of its initial review of Plaintiff's claim, Liberty Life requested and received from Citizens a Physical Job Evaluation Form and job description of Plaintiff's job. (AR at 320-326). Liberty Life also requested and received medical records and completed medical forms from Plaintiff's orthopedic surgeon, Razib Khaund, M.D.

In these records, Dr. Khaund indicated his diagnosis of Plaintiff's condition was cervical degenerative joint disease and cervical radiculitis. (AR at 314). He stated, "Pt is not at work – fully disabled. She is to avoid (sic) work, prolonged sitting and (sic) standing. Limited ROM with regarding to the neck." (<u>Id.</u>). He noted that these restrictions were from March 5, 2003 through the next evaluation in four weeks. (<u>Id.</u>). Dr. Khaund also indicated in his notes from Plaintiff's March 5, 2003 office visit that Plaintiff had had a fair amount of soreness in her neck and "[a]t this point she has been out of work for the last two weeks or so, and we are going to continue her in that regard until we can get some further improvement in terms of the overall neck discomfort itself." (AR at 315-16). Dr. Khaund also wrote that he would re-evaluate Plaintiff in 3-4 weeks. (AR at 316).

On April 22, 2003, at Liberty Life's request Dr. Khaund provided a completed restrictions and functional capabilities form and his notes from Plaintiff's office visit on April 4, 2003. (AR at 305 – 309). In his notes from this office visit, Dr. Khaund noted that Plaintiff had made some improvements in terms of her range of motion but that her

discomfort remained at a constant level. (AR at 308). He indicated that Plaintiff would be returning to work at reduced hours for "two weeks" at four hours per day, and that he would increase her back to her regular time period as tolerated. (Id.). Plaintiff returned to work part-time at Citizens from April 7 through April 11, 2004. She contacted Liberty Life on April 11, 2004 stating that she was going back out of work, that her neck was swollen, and that she was in pain. (AR at 97).

In the restrictions form, which Dr. Khaund completed on April 18, 2003, Dr. Khaund indicated that Plaintiff attempted to return to work with modified hours on April 7, 2003 and April 11, 2003 but that she was unable to continue after a few days. (AR at 306). He also indicated that Plaintiff was to avoid work, prolonged sitting, and standing, and that she had limited range of motion of her neck. (Id.). In the functional capabilities form, which Dr. Khaund completed on April 18, 2003, Dr. Khaund noted that an MRI from December 2002 of Plaintiff's neck revealed degenerative changes. (AR at 307).

On May 7, 2003, Liberty Life requested that Dr. Khaund provide additional medical information, including office treatment notes from May 2, 2003 through the present and completion of another restrictions form. (AR at 303-04). On this same day, Liberty Life requested medical information from Mark Palumbo, M.D., another physician with whom Plaintiff consulted regarding her cervical degenerative joint disease, including his office treatment notes from April 30, 2003 through the present and a completed restrictions form. (AR at 301-02). In response to this request, Dr. Palumbo did not provide Liberty Life any medical information. (See AR at 295). Liberty Life also notified Plaintiff by letter on May 7, 2003 that it was seeking additional medical

information from Dr. Khaund and Dr. Palumbo and asked her to forward medical records from other attending physicians. (AR at 297-98).

Dr. Khaund provided Liberty Life an updated restrictions form dated May 12, 2003. (AR at 292). Dr. Khaund advised that Plaintiff's restrictions were unchanged from the restrictions form completed on April 18, 2003. (Id.). Dr. Khaund also provided Liberty Life his notes from Plaintiff's office visit on May 2, 2003. (AR at 293). In these notes, Dr. Khaund recommended that Plaintiff stay out of work and noted that work exacerbated Plaintiff's pain. He stated, "There is definitely a stress component with regard to her job exacerbating her neck discomfort as well as the overall physical demands of the job itself. I do feel that sitting for any prolonged period of time at a desk is detrimental for her." (Id.) Dr. Khaund indicated his skepticism that Plaintiff would be able to return to work because of her neck arthritis and stated that he asked Plaintiff to consider other options for her future and to consider the possibility of applying for disability. (Id.).

On June 17, 2003, Liberty Life requested that Dr. Khaund provide additional medical information, including office treatment notes from May 3, 2003 through the present, and completion of another restrictions form. (AR at 289-90). On June 17, 2003, Liberty Life also requested medical information from Stephen Mallozzi, M.D., Plaintiff's primary care physician and an internist, including office treatment notes from May 30, 2003 through the present and completion of an attending physician's statement and a functional mental status evaluation. (AR at 287-88). In addition, Liberty Life notified Plaintiff on June 17, 2003, that it was seeking additional medical information from Dr.

Khaund and Dr. Mallozzi and asked her to forward medical records from other attending physicians. (AR at 283-84).

On June 24, 2003, Dr. Khaund provided Liberty Life a completed restrictions form and notes from Plaintiff's office visit on June 11, 2003. (AR at 274-77). In the restrictions form, Dr. Khaund indicated that Plaintiff needed to avoid computer work and prolonged sitting and standing, excessive use of shoulders, lifting of more than five pounds, above shoulder movements, and that she had a limited range of motion of her neck. (AR at 275). In his notes from Plaintiff's June 11, 2003 office visit, Dr. Khaund stated that Plaintiff had mechanical back pain and that she had been seen for possible depression and vertigo. (AR at 276-77). He noted that Plaintiff had intermittent numbness in her upper extremities and had tried using a collar while working at her computer to see if she could return to work, but that wearing the collar was very uncomfortable. (Id.). He noted that on physical exam that Plaintiff was "overall neurovascularly intact in terms of her bilateral upper extremities. Good range of motion of the shoulders with fairly good strength." He then recommended that she remain out of work for eight weeks. (Id.).

On July 9, 2003, a nurse at Liberty Life reviewed Plaintiff's claim file and ultimately concluded that the records did not support a continuation of the restrictions/limitations. (AR at 84). Specifically, she found that the treatment plan for Plaintiff had not appreciably changed as of June 11, 2003, but that Plaintiff's symptoms had improved, which was evident from her reports of only intermittent symptoms. The nurse also suggested that Liberty Life obtain an orthopedic review for further clarification of Plaintiff's claim. (Id.).

On July 10, 2003, Liberty Life sent Plaintiff a letter informing her that it would be reviewing her claim for LTD benefits. In that letter, Liberty Life noted that Plaintiff had been receiving STD benefits since February 24, 2003 and that the maximum period for such benefits was 180 days or until August 22, 2003. (AR at 267-68).

As part of its review of Plaintiff's claim for LTD benefits, Liberty Life requested and received an occupational description of Plaintiff's job, which was a Department of Labor description, from Patricia Thal, a Vocational Case Manager, on July 11, 2003. This description indicated that the physical requirements for Plaintiff's job were sedentary. (AR at 258-265). As part of its review, Liberty Life also sent the claims file to Anthony Parisi, M.D., a physician specializing in orthopedics, for an independent physician review. (AR at 234).

In his July 15, 2003 report, dated July 15, 2003, Dr. Parisi noted that Plaintiff had a prior history of degenerative disease of the cervical spine and that this was exacerbated after her thyroid surgery. (AR at 235). Dr. Parisi opined that Plaintiff did not appear to have true radiculopathy. (Id. at 234). Further, Dr. Parisi opined that the restrictions and limitations were not supported beyond the June 11, 2003 office visit, because Plaintiff appeared to be doing quite well during that office visit with a negative neurological exam and a reasonable range of motion. (Id. at 234-35). He also stated that he did not believe that an additional eight weeks out of work was warranted and that treatment had been reasonably appropriate. (Id.). Regarding Plaintiff's prognosis, Dr. Parisi stated that "this is a degenerative process and is likely to slowly deteriorate with time," i.e. it did not render her totally disabled or unable to perform her job. (Id. at 235).

On or about July 21, 2003, Dr. Mallozzi provided notes from Plaintiff's May 30, 2003 office visit, in which he described treatment plans for Plaintiff's vertigo and depression. (AR at 231-32). Moreover, on or about July 26, 2003, Plaintiff completed a claimant information form, an activities questionnaire, a claimant supplementary statement, a family information questionnaire, consent for release of information, a social security/reimbursement agreement, and a training-education-experience form. (AR at 214-21).

On July 29, 2003, Liberty Life wrote Citizens that it had reviewed Plaintiff's claim for disability benefits and had determined that Plaintiff did not meet the definition of "disability" under the STD Plan.[3] (AR at 228). By letters dated July 29, 2003, Liberty Life notified Plaintiff that she was no longer eligible for STD benefits and that she was not eligible for LTD benefits because she had not satisfied her 180-day elimination period. (Id. at 223-27). Liberty Life explained that the reviewing physician concluded that restrictions and limitations were not supported beyond Plaintiff's June 11, 2003 visit with Dr. Khaund. (Id. at 223). Liberty Life also advised Plaintiff of her appeal rights and that she should provide any information with her appeal that she felt supported her claim. (Id. at 224, 226-27).

**2. Liberty Life's Review of Plaintiff's Appeal of The Initial Denial of Benefits Was Reasonable**

On or about January 4, 2004, Plaintiff sent a letter to Liberty Life describing her view of her medical conditions and providing copies of certain medical records and a list of her medications. (AR at 199-212). In her letter, Plaintiff described her medical

[3] Section 2 of the STD Plan ("the STD Policy") ("Definitions") defines "Disability" or "Disabled" with respect to short-term disability coverage as meaning, "the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Job." (AR at 52).

history since November, 2002. (Id. at 199). She provided information about her thyroid surgery, which occurred on February 24, 2003; alleged issues with dizzy spells; the discovery of a cyst on her brain, and receiving shots of cortisone in her head; depression; a rotator cuff tear, for which she had surgery on November 7, 2003; and arthritis and bursitis in her right knee. (Id. at 199-201). Plaintiff indicated that she had visited doctors other than Drs. Khaund, Mallozzi, and Palumbo since November, 2002 for these other conditions. (Id.). Plaintiff also enclosed records from Dr. Jules Friedman relating to her alleged vertigo and a November 18, 2003 office note from Dr. Khaund relating to her surgery for a torn rotator cuff tendon. (Id. at 203-12).

A nurse in Liberty Life's Managed Disability Services department[4] reviewed Plaintiff's claim file, including the new records submitted by Plaintiff, and concluded that the records did not change the opinion that restrictions/limitations were not supported beyond June 13, 2003. She also noted, among other things, that Dr. Friedman found that Plaintiff's neck had good range of motion and no cervical tenderness, and that Plaintiff's rotator cuff surgery was in November 2003, well after her claim for benefits was denied. (AR at 81). Following this review, Liberty Life referred Plaintiff's file to John Holbrook, MA, MD, FACEP, an internist, for another independent review on January 19, 2004. (AR at 198). In its request for review, Liberty Life asked Dr. Holbrook to determine whether restrictions and limitations beyond June 13, 2003 were supported by the appeal information provided by Plaintiff. (Id.).

In his review, dated January 22, 2004, Dr. Holbrook outlined Plaintiff's conditions, including depression, intermittent dizziness, thyroid metabolism, and

[4] The MDS Department is a department comprised principally of health care professionals such as nurses, and is available as a resource at Liberty Life for obtaining and evaluating information about medical issues involved in administering claims.

arachnoid cyst, stating that it is unlikely that these conditions cause any limitation or impairment. (AR at 193-94). He noted that Plaintiff had rotator cuff surgery on November 7, 2003, and that a six-week course of therapy was prescribed. (Id. at 193). Dr. Holbrook also stated that an update of the orthopedic review by Dr. Parisi may be useful. (Id.). Dr. Holbrook additionally pointed out that cervical degenerative joint disease and cervical radiculitis are mentioned as the basis for impairment, not the other conditions noted in Plaintiff's appeal letter. (Id.).

On February 12, 2004, Liberty Life referred Plaintiff's file to Dr. Parisi, requesting that Dr. Parisi review the information submitted on appeal and answer two questions: (1) "Could pain in neck have been shoulder injury radiating up?" and (2) "Are there meds that support R&Ls from closure date (6/03) thru office note from ortho on 11/18 supplied on appeal?" (AR at 187). In his responsive review, Dr. Parisi stated that there was no new significant data that would alter his position that Plaintiff's limitations did not render her disabled and that his opinion regarding her cervical condition remained unchanged. (AR at 185). Regarding the shoulder surgery, Dr. Parisi opined that it would support limitations and restrictions for a period of only three to four months. (Id. at 186). Dr. Parisi also concluded that it would be unusual for a rotator cuff problem to cause pain radiating up to the cervical spine. (Id. at 185-86).

On February 17, 2004, Liberty Life referred Plaintiff's claim to the Appeal Review Unit for further review. (See AR at 178, 183). The Appeal Review Unit determined that even with the additional information provided by Plaintiff, the restrictions and limitations were not supported for the period June 14, 2003 through the date of surgery on her shoulder, November 7, 2003. (Id. at 175-77, 181-82).

Specifically, the Appeals Unit concluded that the records did not support any claim based on conditions relating to her neck, depression, vertigo, arachnoid cyst, knee pain, or a claim for her rotator cuff injury. (Id.). With respect to the rotator cuff injury, the Appeals Unit concluded that Plaintiff was not in active employment at the time of her surgery for that injury and no benefits were therefore payable relating to that procedure. (Id. at 177, 182). On February 25, 2004, Liberty Life informed Citizens that it had reviewed Plaintiff's claim for STD benefits and recommended that the denial of benefits beyond June 13, 2003 be upheld. (Id. at 180). Citizens then denied Plaintiff's appeal. (AR at 110).

### 3. Liberty Life's Review of Plaintiff's Second Appeal of Her Denial of Benefits

On April 5, 2004, Plaintiff sent a letter to Citizens again appealing the denial of her STD benefits and outlining her view of her medical issues. (AR at 156-74). Plaintiff also enclosed a list of medications, notes from Dr. Khaund, notes and test results from Dr. Friedman, and the results of her MRI from Rhode Island Medical Imaging. (Id. at 160-74). Plaintiff wrote in her letter that she continues to have pain in her neck and difficulty turning her head or looking up and down. (Id. at 156). She also claimed that she had a shot of cortisone in her knee as a result of pain, but that she now has difficulty walking, standing, and rising from a seated position. (Id. at 158). Plaintiff advised that she had an abscess in her neck, which she had discovered in February 2004 and had surgically removed on March 9, 2004. (Id.).

After receiving Plaintiff's second request for review, on May 3, 2004, Liberty Life referred her file for another independent review. (AR at 150-51). Liberty Life requested that the reviewing physician: (1) Provide a description of the claimant's

impairments, if any, and outline how any impairment translates to restrictions and limitations on physical activities; and (2) Determine whether these restriction/limitations were present after 6/13/03. (Id. at 151).

On May 4, 2004, Shlomo Mandel, M.D., a Back and Spine Specialist associated with MLS National Medical Evaluations, Inc., submitted his independent review of Plaintiff's file. (AR at 126-32). He described Plaintiff's condition based on his review, stating that there was no indication of musculoskeletal impairment and opining that the nature of the changes in her cervical spine does not produce functional impairment. (Id. at 130-31). He further opined that there was no indication of significant restriction or limitation on Plaintiff's functional activity and that she could perform frequent sitting, standing and walking activities. (Id. at 131). Dr. Mandel also stated that there was no indication that the clinical findings within the medical records limit her functional capacity or her ability to perform work within the sedentary to light category of work on a full time basis. (Id.). Dr. Mandel concluded that there was no indication of significant restriction or limitation present after June 13, 2003. (Id. at 131-32).

As a result, on May 5, 2004, Liberty Life wrote to Citizens, stating that it had completed its review of Plaintiff's second request for reconsideration of her STD benefits claim and that it was recommending upholding the denial of benefits beyond June 13, 2003. (Id. at 133, 141-42). Citizens then upheld the denial of benefits again. (AR at 110).

#### 4. Plaintiff Did Not Meet The Elimination Period Under The LTD Policy

Based on the clear language in the LTD policy, Plaintiff, like any participant in the LTD Plan, must meet the elimination period to be eligible for LTD benefits.

Specifically, the LTD policy provides that a participant must be disabled or partially disabled for 180 days, during which no LTD benefits are payable, before he/she may be eligible for LTD benefits:

> Elimination Period: 180 days
>
> "Elimination Period" means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability. (AR at 4, 8).

Here, as explained above, Liberty Life and Citizens both concluded that Plaintiff was entitled to STD benefits only from February 24, 2003 to June 13, 2003. As a result, because Plaintiff did not satisfy the elimination period, which would have expired on August 22, 2003, Plaintiff's claim for long-term disability benefits was properly and reasonably denied.[5] (AR at 223-227).

For this reason, Liberty Life's decision to deny Plaintiff's request for LTD benefits was reasonable and was not "arbitrary and capricious." As such, Liberty Life is entitled to summary judgment on Plaintiff's claim for LTD benefits under the LTD policy.

**5. <u>Overall Liberty Life's Decision Was Reasonable</u>**

The foregoing claims and review history unequivocally establish that Liberty Life's determination and recommendation to Citizens that Plaintiff did not qualify for STD benefits was reasonable, was based on the STD Plan, and was amply supported by the records and reports contained in the claims files. The claims file is replete with evidence that Plaintiff did not meet the definition of "disabled" under the STD Plan and

[5] To the extent that the Court concludes that Plaintiff was entitled to short-term disability benefits and, therefore, that Plaintiff has met the elimination period, this case should be remanded to Liberty Life for a review of her long-term disability claim under the terms of the LTD policy.

that Plaintiff's restrictions were not supported beyond Plaintiff's June 11, 2003 office visit with Dr. Khaund.

Liberty Life's recommendation to Citizens to deny Plaintiff's STD benefits was based on its determination that Plaintiff did not meet the definition of disabled under the terms of the STD Plan and that restrictions and limitations were not warranted beyond June 13, 2003. This determination, in turn, was based on more than five reviews of Plaintiff's medical records, including reviews by a physician specializing in orthopedics, an internist, a nurse, a physician specializing in the back and spine as well as the entire claims file, all of whom concluded that Plaintiff's medical records and test results did not render her "disabled," i.e. unable to return to her former job.

Thus, Liberty Life's determination is supported by ample evidence on the record and is based upon that evidence. Plaintiff did not, and cannot, demonstrate that, after this extensive review process, the determination of Liberty Life is anything other than reasonable and plausible.[6] Because its decision was reasonable and supported by the applicable plan documents, Liberty Life is entitled to summary judgment on Plaintiff's claim for LTD benefits.

---

[6] The opinions of Plaintiff's treating physicians do not require special deference by Liberty Life. See Black & Decker Disability Plan v. Nord, 123 S.Ct. 1965, 1966 (2003) (holding that ERISA does not require a plan administrator to accord special deference to the opinions of treating physicians.).

## III. CONCLUSION

For the reasons set forth above, Defendant Liberty Life Assurance Company of Boston respectfully requests that the Court grant summary judgment in its favor on Plaintiff's claim for LTD benefits.

Respectfully submitted,

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON
By its attorneys,

Anthony J. DiOrio (RWP)

Anthony J. DiOrio, R.I. Bar No. 3419
JACKSON LEWIS LLP
127 Dorrance Street
Providence, RI 02903
(401) 454-7700 telephone
(401) 454-8855 fax

Andrew C. Pickett
(Admitted *Pro Hac Vice*)
Richard W. Paterniti
(Admitted *Pro Hac Vice*)
JACKSON LEWIS LLP
75 Park Plaza
Boston, Massachusetts 02116
(617) 367-0025

DATED: June 22, 2005

## CERTIFICATE OF SERVICE

This hereby certifies that on this 22nd day of June, 2005, a copy of the foregoing document was served upon Plaintiff's attorney, Monica Horan, Esq., 393 Armistice Boulevard, P.O. Box A, Pawtucket, RI 02861, and upon counsel for Citizens Financial Group, Inc., Joseph D. Whelan, Esq., Hinckley, Allen & Snyder, LLP, 1500 Fleet Center, Providence, RI 02903, via overnight mail.

Anthony J. DiOrio (RWP)
Jackson Lewis LLP