UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MAUREEN L. BEAUVAIS | : | |
| | : | |
| VS | : | C.A. NO. 04-403T |
| | : | |
| CITIZENS FINANCIAL GROUP, INC., AND LIBERTY LIFE ASSURANCE COMPANY OF BOSTON | : | |

**STATEMENT OF UNDISPUTED FACTS**

In support of its Motion for Summary Judgment, Defendant Citizens Financial Group, Inc. submits the following statement of undisputed material facts.

1. In February of 2003, Plaintiff, Maureen Beauvais, was employed by Citizens as an Assistant Manager in the Consumer Finance Department at the Citizens branch located in Warwick, Rhode Island. (Citizens' Answer to Plaintiff's Complaint, ¶ 4).

2. As part of her employment with Citizens, Plaintiff was offered coverage under a self-funded short-term disability plan.

3. Pursuant to the "Group Disability Risk Management Agreement" between Citizens and Liberty, Liberty provided claims management to Citizens on an *administrative services basis*, and Citizens retained the authority to make final decisions under the short-term disability plan. (AR00043-AR00077).

4. With respect to the long-term disability plan offered to Citizens employees, Liberty insured long-term disability benefits under a "Group Disability Income Policy" issued to Citizens. (AR00001-AR00042).

5. Under this policy, Liberty had discretionary authority to construe the terms of the policy and make decisions on claims. (AR00037).

6. Plaintiff Maureen Beauvais underwent a thyroidectomy on February 24, 2003. (AR00100).

7. Plaintiff took a medical leave beginning on February 24, 2003. (AR00156).

8. Plaintiff was determined to be eligible for, and began receiving, short-term disability benefits on or about February 25, 2003 (Plaintiff's Complaint, ¶6).

9. From February 25, 2003 through June 2, 2003, Plaintiff regularly forwarded additional medical records and progress notes to claim representatives at Liberty. (AR00093-AR00100).

10. From February 25, 2003 through June 2, 2003, Plaintiff spoke on the telephone with claim representatives at Liberty regarding her requests for extensions of her short-term benefits based on a longer recovery period than originally expected from her thyroidectomy, cervical spine symptoms, cervical degenerative disease, neck pain, muscle spasms, and arthritic symptoms. (AR00093-AR00100).

11. On April 7, 2003, Plaintiff returned to work on a part-time basis. Her return to work, however, lasted for only one week. (AR00097).

12. Plaintiff's short-term disability benefits' claim was extended through June 13, 2003 by Citizens. (AR00092).

13. On or about June 17, 2003, Plaintiff again requested an extension of her short-term benefits, and advised Liberty that one of her physicians, Dr. Khaund, had suggested she would be out of work for another eight (8) weeks. (AR00092).

14. At this time, the Plaintiff cited depression and vertigo as additional reasons why she needed an extension of her short-term benefits. (AR00092).

15. This claim was sent by Citizens to Liberty for review and recommendation.

16. Additional medical documentation supporting Plaintiff's claim was requested from Plaintiff's treating physicians by Liberty. (AR00091-AR00092).

17. The Plaintiff's medical documentation was then reviewed by Orthopedic Physician Dr. Anthony Parisi on July 15, 2003. (AR00234-AR00235).

18. Dr. Parisi reviewed the following documentation:
    - Medical records;
    - Notes from Plaintiff's attending physician;
    - Neurological Exam;
    - Treatment notes; and
    - Plaintiff's Plan of Medication. (AR00234-AR00235).

19. Upon completion of his review, Dr. Parisi drafted a two page memorandum regarding his conclusions and recommendations, answers to specific questions with respect to the Plaintiff's restrictions and limitations, an analysis of the

Plaintiff's medical condition, and a summary of his findings. (AR00234-AR00235).

20. Dr. Parisi stated in his memorandum, *"The insured does not complain of significant pain down her upper extremities, nor does she complain of persistent numbness and tingling. True radioculopathy does not appear to be present."* (AR00234).

21. Dr. Parisi further stated, *"I do not feel that restrictions and limitations of a significant nature are well supported beyond the 6/11 office visit. At that visit, she appears to be doing quite well with a negative neurological exam and a reasonable range of motion. X-ray and MRI reports are not present to support advanced degenerative disease. Treatment has been reasonably appropriate."* (AR00234).

22. Dr. Parisi concluded, *"The insured's current plan of medication and appropriate exercise and ergonomics is reasonable. I do not feel, however, that an additional eight weeks out of work is warranted, as she has already been out of work since 2/24/03. I do not think that will significantly alter her condition."* (AR00235).

23. Liberty recommended to Citizens, based on Dr. Parisi's review, that the denial of benefits beyond June 13, 2003 be sustained because Plaintiff did not meet the definition of "Disabled" under the Plan. (AR00228).

24. Citizen's Short Term Disability Benefits Plan defines "Disability" or "Disabled" as meaning *"the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Job."* (AR00052).

25. Citizens agreed with Liberty's recommendation.

26. On July 29, 2003, Plaintiff was notified by mail that her short-term disability claim had been closed effective June 14, 2003. (AR00090 & AR00223).

27. Plaintiff was also notified that she was not eligible for long-term disability benefits because she had not fulfilled the Plan's required "Elimination Period." (AR00226).

28. In both letters, Liberty informed the Plaintiff that she had 180 days to file an appeal. (AR00224 & AR00226).

29. On or about January 12, 2004, Plaintiff filed an appeal from Citizens' denial of short-term benefits beyond June 13, 2003. (AR00089).

30. Plaintiff also provided additional medical records and reports in January 2004. (AR00089).

31. Included in these records were records indicating that Plaintiff had undergone rotator cuff surgery on November 7, 2003.

32. On or about January 15, 2004, Plaintiff's complete file was given to Nurse Debra Kaye for review. (AR00080-AR00081).

33. On January 16, 2004 Nurse Kaye reported that an award of Short-Term disability benefits was not supported beyond June 13, 2003. (AR00080).

34. Nurse Kaye noted that there were inconsistencies in the appeal information and contradictory information in the physical examination records supplied on appeal by claimant. (AR00079).

35. On or about January 22, 2004, Plaintiff's file was reviewed by Internal Medicine physician, Dr. John Holbrook, M.A., M.D., F.A.C.E.P. (AR00188).

36. On January 22, 2004, Dr. Holbrook reviewed the following medical documentation and various reports:

- Statement/letter of Plaintiff dated 1/4/2004;
- Reports/Consultation notes of Dr. Jules Friedman, Otoneurologist;
- MRI reports;
- Office Notes/Progress Notes of Dr. Razib Khaund, Orthopedic Surgeon;
- An Activities Questionnaire dated 7/26/2003;
- Medical Review of Dr. Anthony Parisi dated 7/15/2003;
- Office Notes/Progress Notes of Dr. Steve Mallozzi; and
- Surveillance reports and memoranda from 7/3/2003 through 7/7/2003. (AR00189-AR00192).

37. Dr. Holbrook stated in his memorandum, *"I note that the claimant complained to her internist of several months of depression on 5/30/2003, and the treatment with Lexapro was instituted. However, no impairment is claimed on a psychiatric basis ..."*(AR00188).

38. Dr. Holbrook further stated in his memorandum, *"The claimant reports intermittent dizziness. ENT workup suggests that the claimant's dizziness is on the basis of a left peripheral vestibular dysfunction, probably from a past episode of labyrinthiti. The claimant's dizziness is reported as occurring once, at most twice a day and lasting only for several minutes. It is unlikely that this level of dizziness is sufficiently significant to cause any impairment that would preclude the claimant's ability to work."* (AR00189).

39. Dr. Holbrook further stated in his memorandum, *"The claimant is reported to have had thyroid surgery, and is currently taking Synthroid replacement. The*

*records reflecting the management of her thyroid status are not available for review. No current impairment is claimed on the basis of the claimant's thyroid metabolism. It is unlikely that the claimant had any limitation on the basis of her thyroid status after June 2003."* (AR00189).

40. Dr. Holbrook also concluded in his memorandum, *"It is unlikely that the arachnoid cyst of the claimant's superior cerebellar cistern is causing any symptoms; it is therefore unlikely that it is causing any limitations or impairment."* (AR00189).

41. Dr. Holbrook drafted a five page memorandum regarding his recommendations, analysis, answers to specific questions with respect to the Plaintiff's restrictions and limitations, and an analysis of the Plaintiff's medical history. (AR00188-AR00192).

42. Dr. Holbrook formed the opinion that there was insufficient information in the medical record to support benefits beyond June 13, 2003. (AR00188-AR00189).

43. Liberty requested that Plaintiff's updated file be reviewed again by Orthopedist Dr. Parisi. (AR00185).

44. Dr. Parisi opined that his professional opinions were unchanged upon review of the additional materials supplied by Plaintiff and her treating physicians. (AR00185-AR00186).

45. Nurse Kaye, Dr. Holbrook, and Dr. Parisi concluded that there was no medical documentation to indicate that Plaintiff suffered from an ongoing disability from June 11, 2003 through November 7, 2003.

46. Liberty recommended to Citizens that, because benefits were not supported beyond June 13, 2003, and because Plaintiff was not considered to be in active employment on November 7, 2003, no benefits could rightfully be paid to Plaintiff for her rotator cuff procedure. (AR00180-AR00182).

47. Citizens reviewed the recommendation by Liberty to maintain its denial of benefits to Plaintiff.

48. A letter was sent to plaintiff on March 18, 2004, denying her benefits beyond June 13, 2003.

49. Plaintiff authored a letter on April 5, 2004 acknowledging receipt of her denial letter, requesting an Appeal/Review of the denial, and referencing additional medical conditions such as arthritis and recent hospitalizations for a neck abscess in support of her continued claim of entitlement to Short-Term and Long-Term Benefits. (AR00156-AR00159).

50. Citizens requested that Liberty conduct a second review based on Plaintiff's Second Appeal. (AR00088).

51. Between May 3, 2004 and May 5, 2004, Plaintiff's updated file was reviewed by Nurse Betty Todd. (AR00087-AR00088).

52. Nurse Todd found no evidence of an impairment warranting an award of benefits. (AR00087).

53. On or about May 4, 2004, Plaintiff's file was reviewed by Board Certified Back and Spine Specialist, Dr. Shlomo Mandel. (AR00126-AR00129).

54. Dr. Shlomo Mandel reviewed the following materials:
- progress notes of Dr. Razib Khaund (post-thyroid surgery);
- surveillance report summarizing surveillance of Plaintiff from July 3, 2003 through July 7, 2003;
- activities questionnaire signed by Ms. Beauvais on 7/26/03;
- MRI examination of the brain dated 8/4/03;
- MRI examination report;
- reports regarding left shoulder surgery;
- otoneurology consultation notes;
- vestibular study and platform test results from 12/15/03;
- notes from consultation with Dr. Jules Friedman;
- report from Dr. Anthony Paresi;
- summary of the Plaintiff's medical history by Dr. John Holbrook (M.A., M.D.); and
- detailed job description for the position of "Supervisor, lending activities." (AR00126-AR00129).

55. Dr. Mandel drafted a seven page report summarizing his review of the records, his conclusions, his responses to specific questions regarding the claimant's possible impairments, limitations, and restrictions, and an opinion with respect to whether any restrictions or limitations were present after June 13, 2003. (AR00126-AR00132).

56. Dr. Mandel stated in his memorandum, *"From my review of the medical record, there is no indication of musculoskeletal impairment ... Ms. Maureen Beauvais apparently has symptoms, which were temporarily aggravated by positioning during a partial thyroidectomy surgery. In my opinion,* ***according to the clinical findings and reports, the nature and extent of the spondylitic changes in the cervical spine do not produce functional impairment."*** (AR00130-AR00131).

57. Dr. Mandel further stated in his memorandum, ***"As there is no functional impairment based upon the objective medical evidence provided from a***

***muscleoskeletal point of view, there are not significant restrictions or limitations on her functional activity,*** *Ms. Beauvais could perform carrying and lifting activities up to 20 pounds on a frequent basis, pushing, pulling and reaching activities should be on an occasional basis, there are no restrictions on her handling, occasional fingering, fine finger manipulation, talking, hearing or conversing, and there is no indication based upon the objective medical evidence provided that the clinical findings within the enclosed medical records limit her functional capacity or her ability to perform work within the sedentary to light category of work on a full time basis..."* (AR00131).

58. Dr. Mandel further stated in his memorandum, "*... there is no indication of significant restriction or limitation in this case and included in this opinion in the finding of the vestibular dysfunction, cervical spondylosis and history of rotator cuff surgery in November of 2003.* ***There are no restrictions and limitations present after June 13, 2003.***" (AR00131-AR00132).

59. Dr. Mandel determined that there was no evidence of musculoskeletal or functional impairment and that he did not note any restrictions or limitations present after June 13, 2003 that would impair the Plaintiff's ability to perform her job on a full-time basis. (AR00130-AR00132).

60. Liberty recommended that Citizens maintain its denial of benefits to Plaintiff beyond June 13, 2003. (AR00133).

61. Citizens notified Plaintiff of its denial of her Second Appeal by letter dated May 6, 2004.

62. Having exhausted her administrative remedies, Plaintiff filed a Complaint with the United States District Court for the District of Rhode Island on or about September, 2004.

63. By her Complaint, Plaintiff claims that, "Defendants Citizens Financial Group, Inc. and Liberty Mutual (sic), have unlawfully denied Plaintiff Short-Term and Long-Term Disability Benefits pursuant to the terms of the Citizens Financial Group, Inc.'s Short-Term and Long-Term Disability Plans." (Plaintiff's Complaint, ¶ 17).

64. Plaintiff further alleges, "Defendants, Citizens Financial Group, Inc. and Liberty Mutual, have unlawfully interfered with Plaintiff's right to receive benefits under the Citizens Financial Group, Inc.'s Short-Term and Long-Term Disability Plans." (Plaintiff's Complaint, ¶ 18).

65. Plaintiff has brought her Complaint under 29 U.S.C. §1132 to enforce her rights under the Short-Term and Long-Term plans and seeking an award of benefits under said plans.

66. Defendant Citizens filed its answer on October 28, 2004.

67. Defendant Liberty Life filed its answer on October 29, 2004.

Respectfully submitted,

CITIZENS FINANCIAL GROUP, INC.
By its Attorneys,

Joseph D. Whelan (#5694)
Kristie L. McCann (#6945)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, Rhode Island 02903
(401) 274-2000
(401) 277-9600 (fax)

**CERTIFICATION**

To:

Anthony J. DiOrio, Esq.
JACKSON LEWIS LLP
127 Dorrance Street
Providence, RI 02903

Andrew C. Pickett, Esq.
Richard W. Paterniti, Esq.
JACKSON LEWIS LLP
75 Park Plaza
Boston, MA 02116

Monica Horan, Esq.
393 Armistice Boulevard
P.O. Box A
Pawtucket, RI 02861

I hereby certify that I mailed a copy of the within Statement of Undisputed Facts to counsel of record, as above, on the 22nd day of June, 2005.