# United States District Court
# for the District of Rhode Island

| | | |
|---|---|---|
| MAUREEN L. BEAUVAIS | : | |
| v. | : | Case No.: 04-403T |
| CITIZENS FINANCIAL GROUP, INC. And LIBERTY LIFE ASSURANCE COMPANY OF BOSTON | : | |

## PLAINTIFF'S, MAUREEN BEAUVAIS, MOTION FOR SUMMARY JUDGMENT

Now comes Plaintiff, Maureen Beauvais, by and through her attorney, and she hereby moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support of this Motion, Plaintiff relies upon the memorandum of law and statement of undisputed facts filed herewith.

**Request for Oral Argument**

Plaintiff respectfully requests that this Honorable Court permit oral argument on this Motion pursuant to Local Rule 12 of the District Court of Rhode Island, if said argument would be of assistance to the Court.

MAUREEN BEAUVAIS
By Her Attorney,

MONICA HORAN (#5227)
393 Armistice Boulevard
P.O. Box A
Pawtucket, RI 02861
(401) 725-7368
(401) 726-2460 (facsimile)

**CERTIFICATION**

I, the undersigned, do hereby certify that I hand-delivered a copy of the within Motion for Summary Judgment to Joseph D. Whelan, Esquire, Hinckley, Allen & Snyder, LLP, 1500 Fleet Center, Providence, Rhode Island 02903; Anthony J. DiOrio, Esquire, Jackson Lewis LLP, 127 Dorrance Street, Providence, Rhode Island 02903; and Richard W. Paterniti, Esquire (pro hac vice), Jackson Lewis LLP, 75 Park Plaza, Boston, Massachusetts 02116 on this 13th day of July, 2005.

**United States District Court**
**for the District of Rhode Island**

| | | |
|---|---|---|
| MAUREEN L. BEAUVAIS | : | |
| | : | |
| v. | : | Case No.: 04-403T |
| | : | |
| CITIZENS FINANCIAL GROUP, INC. | : | |
| And LIBERTY LIFE ASSURANCE | : | |
| COMPANY OF BOSTON | : | |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S, MAUREEN BEAUVAIS, MOTION FOR SUMMARY JUDGMENT AND OBJECTION TO DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

***Submitted by:***

Monica Horan, Esq. (#5227)
393 Armistice Boulevard
P.O. Box A
Pawtucket, RI 02861
(401) 725-7368
(401) 726-2460

**United States District Court**
**for the District of Rhode Island**

| | | |
|---|---|---|
| MAUREEN L. BEAUVAIS | : | |
| | : | |
| v. | : | Case No.: 04-403T |
| | : | |
| CITIZENS FINANCIAL GROUP, INC. And LIBERTY LIFE ASSURANCE COMPANY OF BOSTON | : | |

## TABLE OF CONTENTS

**Page**


**1. DESCRIPTION OF MOTION** .......... 1

**2. FACTS** .......... 1

**3. ISSUES** .......... 7

**4. POINTS & AUTHORITIES** .......... 7

a. Standard of Review .......... 7

b. Liberty's Decision to Deny Plaintiff Short-Term Disability Benefits After June 13, 2003 is Not Reasonable and is Not Supported by the Record .......... 8

c. Liberty and Citizen's Denial of Plaintiff's First Appeal .......... 11

1. Dr. Holbrook's Report .......... 11
2. Dr. Parisi's Review .......... 12

d. Liberty and Citizen's Denial of Plaintiff's Second Appeal .......... 13

e. Decision to Deny Plaintiff Long-Term Disability Benefits .......... 15

f. Selective Review of Medical Evidence .......... 15

g. Plaintiff's Social Security Disability Award Factor .......... 17

**5. CONCLUSION** .......... 17

**6. TABLE OF AUTHORITIES** .......... 19

## 1. DESCRIPTION OF MOTION

Plaintiff, Maureen Beauvais, has brought this action for unlawful denial of both Short-Term Disability and Long-Term Disability Insurance Benefits pursuant to 29 U.S.C. §1132 (a)(1)(B) against Citizens Financial Group, Inc. ("Citizens") and Liberty Life Assurance Company of Boston ("Liberty"). Plaintiff is entitled to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as fully explained herein because Citizens and Liberty did not evaluate Plaintiff's claim fairly and reasonably in order to determine that Plaintiff was, in fact, disabled pursuant to their own policies.

## 2. FACTS

Plaintiff was hired by Citizens in 1987 as a teller. Throughout the term of her employment, she received several promotions which culminated when she became the Assistant Vice President of the Loan Processing Department of Citizens. (Plaintiff's Complaint ¶4). Her duties included heading a department and being in charge of 20 employees. Throughout her employment, Plaintiff was a model employee and, in fact, received the highest number of a "1" on her last review (AR 00157)[1]. As part of her employment with Citizens, Plaintiff was eligible for short-term disability and long-term disability benefits. The short-term disability benefits plan that Citizens maintained was self-funded. (AR 00044). Pursuant to a Group Disability Risk Management Agreement between Citizens and Liberty, Liberty was to provide administrative services for Citizens short-term disability policy, which included claims services, claim payments, claims processing and claim review. (AR 00044 – AR 00077). The Citizens Long-Term Disability Plan is governed by a "Group Disability Income Policy" between Citizens and Liberty. Pursuant to that Plan, Liberty pays the benefits under the policy, Liberty, in its sole discretion, has the authority to

---

[1] In support of Liberty's Motion for Summary Judgment filed with this Court, Liberty submitted the complete administrative record with bate stamps. All references to (AR) in Plaintiff's Memorandum refer to that record.

construe the terms of the long-term disability policy and determine the employee's eligibility for benefits. (AR 00016), (AR 00037).

In November of 2002, Plaintiff discovered a swelling on her clavical bone. She treated with her primary physician, Dr. Stephen Mallozzi, who subsequently referred her to Dr. Razib Khaund, an orthopedic surgeon. Dr. Khaund ordered an MRI of Plaintiff's neck and spine. (AR 00199). The MRI revealed that Plaintiff suffered severe degenerative disc disease and further indicated that Plaintiff had a nodule on her thyroid. (AR 00156). Plaintiff was referred to Dr. Greenberg for her thyroid nodule. Dr. Greenberg scheduled surgery for February 23, 2003. (AR 00199).

On or about February 25, 2003 after Plaintiff's surgery, she began receiving short-term disability benefits from Citizens' Short-Term Disability Plan. (Plaintiff's Complaint ¶6). In March of 2003, as part of evaluating Plaintiff's claim for disability, Liberty requested that Citizens complete a job evaluation for Plaintiff's position and provide a job description for Plaintiff's position. (AR 00323-00325). Liberty received the completed physical job evaluation form from Citizens, but there is no indication that a job description was provided. (AR 00320-AR 00321).

On March 7, 2003, a representative of Liberty Mutual requested medical records from Dr. Khaund for treatment of Plaintiff from February 24, 2003 through the present. (AR 00319). Dr. Khaund submitted his office notes from March 5, 2003 and a completed Restrictions Form dated March 12, 2003. In his office notes, Dr. Khaund indicated that Plaintiff suffered from cervical degenerative disc disease and that she was to begin physical therapy. (AR 00315-AR 00316). In the restrictions form submitted to Liberty, Dr. Khaund states:

- Plaintiff is fully disabled
- She is to avoid prolonged sitting
- She has severe degenerative disc disease
- An MRI report of 12/16/02 shows degenerative changes in C-Spine at C5-C6
- Patient does get radicular pain and constant (unknown word) in neck (AR 00314).

On April 18, 2003, at the request of Liberty, Dr. Khaund submitted updated office notes and a completed functional capacities form regarding Plaintiff's condition. In his office notes dated April 4, 2003, Dr. Khaund released Plaintiff to return to work for four hours a day for a few weeks. (AR 00308-AR 00309). Plaintiff attempted to return to work on reduced hours on April 7, 2003, but she was unable to continue after reporting to work for a few days due to her neck discomfort. (AR 00306 and AR 00293). In his functional capacities report, Dr. Khaund again refers to Plaintiff's MRI of December 2002 as indicating severe degenerative disc disease. He further indicates that Plaintiff is limited in her daily activities and is only able to perform most activities about 1/3 of the time. (AR 00306-AR 00307).

In May of 2003, Dr. Khaund again submitted his office notes and a completed restrictions form at the request of Liberty. Dr. Khaund indicated that Plaintiff's condition was unchanged from his form submission of April 18, 2003. (AR 00292 and AR 00295). During Plaintiff's visit to Dr. Khaund in May 2003, they discussed that there are physical demands of Plaintiff's job and also a "stress component" to her job that "exacerbates" her neck discomfort. (AR 00293). In his office notes of May 2, 2003, Dr. Khaund states:

> "I do feel that sitting for any prolonged period of time at a desk is detrimental for her."
>
> "At this point, I am very skeptical about her ability to return back to her employment as a consequence of her neck arthritis." (AR 00293).

Dr. Khaund indicated he would see Plaintiff again in six weeks.

On May 30, 2003, Dr. Mallozzi, Plaintiff's primary physician, began treating Plaintiff for vertigo and depression. (AR 00232). On June 11, 2003, Plaintiff went to Dr. Khaund's office for a follow-up visit. Dr. Khaund submitted his office notes from that visit and a completed restrictions form to Liberty. During the June 2003 office visit, Dr. Khaund noted the following:

- The patient denies persistent numbness or tingling in the upper extremities, but they do occur intermittently.
- She's tried using a collar while working on her computer in an effort to see if she can try to return back to work. This is very uncomfortable for her.
- She suffers from mechanical back and neck pain.
- He recommends that she stay out of work for the next eight weeks. (AR 00162–AR 00163).

In his restrictions form submitted to Liberty, Dr. Khaund notes the following:

- Plaintiff to avoid computer work, prolonged sitting and standing.
- Limited ROM in neck.
- No lifting over 5 lbs.
- Her response to the treatment plan has been "mild". (AR 00275).

Dr. Khaund indicated that he would re-evaluate her ability to return to work in eight weeks. (AR 00275).

In June 2003, Plaintiff requested buy-up coverage under the Citizens Long-Term Disability policy (AR 00278-AR 00279). On July 3, 4 and 7 of 2003, MJM Investigators, at Liberty's request, conducted surveillance of Plaintiff's activities at her home. (AR 00237-AR 00246). The investigation did not reveal anything that was inconsistent with Plaintiff's claim that she was disabled and unable to work.

On July 11, 2003, Liberty requested and received an occupational description from the Department of Labor for the position of Supervisor, Lending Activities. The Vocational Case Manager notes that the claim file and industry in which this employee works have <u>not</u> been reviewed by a Liberty Mutual Vocational Case Manager. Therefore, the job description that was provided is not an accurate job description for Plaintiff's position of Assistant Vice President of the Loan Processing Department. She wasn't a Supervisor of Lending Activities. The Manager states that "[I]f a claim determination is being considered on the basis of this information, Disability Case Manager should consider a referral for a complete Vocational Case Manager file review and to determine if further investigation, including, but not limited to, a Labor Market Survey is needed." (AR 00258). There is no indication in Liberty's file that a further review of Plaintiff's position was done by a Vocational Manager.

It is also interesting to note that Liberty, nor any of its consultants, ever received a job description for Plaintiff's actual position, despite the fact that Liberty requested it in March of 2003 from Citizens.

During its review of Plaintiff's claim for short-term disability benefits, Liberty referred her case to Dr. Anthony Parisi, who is a consulting physician for Liberty Mutual. In a report dated July 15, 2003, Dr. Parisi opines that an additional 8 weeks out of work, as recommended by Dr. Khaund in his report of June 11, 2003, is not supported by the file. Despite all of the evidence indicating that Plaintiff suffered from severe degenerative disc disease and is unable to perform the "material and substantial duties of her occupation" as stated in the Short-Term Disability Plan. Liberty sent a letter to Plaintiff on July 29, 2003 informing her that she no longer met the definition of disability and denied her short-term benefits after June 14, 2003. (AR 00223-AR00224). The denial of benefits was based upon Dr. Parisi's report from July 15, 2003. Liberty also denied Plaintiff's request for Long-Term Benefits.

On January 4, 2004, Plaintiff filed a written request to appeal the denial of her benefits after June 13, 2003. In support of her appeal, Plaintiff submitted a three-page letter which detailed her treatment and diagnosis to date. (AR 00199). It also listed each treating physician and their address. Finally, she submitted a medication log of her current medication. Liberty had her consent to obtain any of these physicians' records, or any of her documentation sent in support of her claim for Social Security Disability Benefits, since she had signed an Authorization for Liberty in July of 2003. (AR 00199-AR 00202). Prior to her written request for an appeal, Plaintiff had continued to submit medical documentation to Liberty to support her claim for benefits. On August 6, 2003, Plaintiff met with Dr. Khaund to follow up on her treatment. During that visit, Dr. Khaund noted the following:

- Her vertigo is not resolved.
- She developed cystic swelling in her brain.
- She still has daily discomfort and stiffness in her neck.
- He does not believe that she can return to work in any capacity.

- She has a torn left rotator cuff. (AR 00164-AR 00165).

From these notes, it is clear that Plaintiff still suffered from the degenerative disc disease and it still affected her ability to work, since she still had daily discomfort and stiffness in her neck. Furthermore, each time she returned to Dr. Khaund, she reported a new problem with her health. First, she suffered from vertigo, which she began treating with Dr. Mallozzi in April. In August, Dr. Khaund reports that she has a torn left rotator cuff. On November 7, 2003, Plaintiff had surgery to repair her torn left rotator cuff. (AR 00166). On November 20, 2003, she consulted with Dr. Friedman for episodes of dizziness. In Dr. Friedman's report, he notes that Plaintiff has episodes of dizziness "pretty much daily". "She can have two or even three episodes a day or as few as one and occasionally might miss a day here and there when she is free of them". (AR 00170). She reported that the frequency of her dizziness increased after her thyroidectomy. Id. Dr. Friedman diagnosed Plaintiff with a fixed peripheral lesion on the left brain. He stated "it became clear that she has learned to restrain her head movements and finds that environments in which visual clues are orientationally ambiguous produce her symptoms as well. (AR 00203).

On January 22, 2004, Liberty received a report from John Holbrook, a medical consultant to Liberty relative to Plaintiff's request for disability benefits after June 13, 2003. On February 24, 2004, Dr. Parisi submitted an updated report to Liberty relative to Plaintiff's claim. (AR 00185). On February 17, 2004, Liberty informed Plaintiff that her claim was referred to the Appeal Review Unit for further review. (AR 00183). On February 25, 2004, Liberty sent a letter to Citizens recommending the denial of benefits to Plaintiff beyond June 13, 2003. (AR 00180). Liberty has an analysis and recommendation for the decision in their file (AR 00175-177). On April 5, 2004, Plaintiff filed a second appeal from the denial of her benefits with Citizens. (AR 00156-160). On May 4, 2004, Dr. Shlomo Mandel, a Liberty Consultant, provided Liberty with a report relative to Plaintiff's claim. (AR 00143-149).

As a result of Dr. Mandel's review, Plaintiff was again notified that she was denied both short-term and long-term disability benefits on May 6, 2004. In August of 2004, Plaintiff had applied for Social Security Disability Benefits. On June 9, 2004, Plaintiff was notified by the Social Security Administration that she was eligible for benefits commencing August 4, 2003, as she was disabled as of February 20, 2003. The decision by Social Security is based upon the same medical conditions that Plaintiff submitted to Liberty.

## 3. ISSUES

Whether Plaintiff was improperly denied short-term and long-term disability benefits by Citizens and Liberty.

## 4. POINTS AND AUTHORITIES

### a. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the granting of a summary judgment motion is appropriate when all of the evidence before the Court demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. In a case such as this, which is based upon the Employee Retirement Income Security Act ("ERISA"), the Court evaluates the same record that the Plan Administrator evaluated in making its determination with respect to benefits. In ERISA cases, the Court does not usually act as a trial court, but more of an appellate court evaluating the record. Leahy vs. Raytheon Co., 315 F.3d 11, 17-18 (1st Cir. 2002). Since the administrator's record is agreed to by the parties, summary judgment is appropriate in this case.

The standard of review of a plan administrator's decision to deny benefits is enunciated in the United States Supreme Court case of Firestone Tire & Rubber Co. vs. Bruch, 489 U.S. 101, 103 L.Ed. 2d 80, 109 S.Ct. 948 (1989). In Firestone, the Court applied general principles of trust law and held that the standard of review to be applied in cases brought for denial of benefits of an ERISA plan is a de novo standard, unless the benefit plan confers discretionary authority to the plan administrator to determine eligibility

for benefits or construe the terms of the plan. In that case, the insurer's decision will be reviewed under a more deferential standard of arbitrary and capricious. Id. Pari-Fasano vs. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415 (1st Cir. 2000). Id. 489 U.S. at 115; but, the Court held that if the insurer is operating under a conflict of interest, the arbitrary and capricious standard will be modified and the fact that the insurer is operating under a conflict is a factor to be considered by the law. Firestone Tire & Rubber vs. Bruch, 489 U.S. at 95. The First Circuit has held that when such a conflict exists for the insurer, the court will require that the insurer's decision to deny benefits be reasonable. Doe v. Traveler's Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999). In Doe, the insurer was required to pay the claim out of its own assets, thereby exhibiting a conflict as envisioned by the Court in Firestone. Accordingly, in Doe, the First Circuit applied the heightened standard of a reasonable standard of review and held that

> "The essential requirement of reasonableness has substantial bite itself, where, as here, we are concerned with a specific treatment decision based on medical criteria and not some broad issue of public policy." Doe 167 F.3d at 57.

In this case, the short-term disability plan offered by Citizens is a self-funded plan. This is exactly the type of case the Firestone court discussed when it stated that a conflict exists for insurers. Since Citizens operated under a conflict when it decided to deny Plaintiff's short-term disability claim, this case should be viewed under the heightened standard of "reasonable" rather than an arbitrary and capricious standard of review. Similarly, Liberty is the decision-maker and payor of any and all claims for long-term disability. The denial of the long-term disability claim should be reviewed under a "reasonable" standard as well.

b LIBERTY'S DECISION TO DENY PLAINTIFF SHORT-TERM DISABILITY BENEFITS AFTER JUNE 13, 2003 IS NOT REASONABLE AND IS NOT SUPPORTED BY THE RECORD.

In their letter to Plaintiff, Liberty stated that the denial of her short-term disability benefits was based upon Dr. Parisi's report of July 15, 2003. Dr. Parisi's report is

insufficient in that it fails to consider all of the evidence supporting the fact that Plaintiff is disabled. Dr. Parisi states that he is unaware of the degree of degenerative change in her neck, but it appears that they are not very severe at this time. (AR 00234). What Dr. Parisi is basing this opinion on is very circumspect. As Dr. Khaund has stated repeatedly in his submissions to Liberty, Plaintiff suffers from severe degenerative disc disease, which is evidenced by an MRI taken in December of 2002. The lack of the MRI in the file and its effect on Dr. Parisi's opinion is evident in his own report. Dr. Parisi states:

- X-ray or MRI reports are not present to support advanced degenerative disease.
- The attending physician feels she has a fair amount of arthritis, but I am not sure or just what level of degenerative disease she has.
- An MRI or plain X-rays would be of help in determining the severity of her condition. (AR 00234-AR 00235).

Despite the fact that Dr. Parisi has not examined Plaintiff and despite the fact that there is no MRI present to support or contradict his conclusions, Dr. Parisi states that Plaintiff can return to work. Furthermore, Dr. Parisi's report fails to address the fact that Plaintiff attempted to return to work in April, but was unable to do so due to the pain in her neck. Dr. Parisi's report also fails to consider the nature of Plaintiff's job. In Dr. Khaund's restrictions form submitted to Liberty in June of 2003, he stated that Plaintiff is to avoid computer work and prolonged sitting and standing. (AR 00275). In the physical job evaluation form completed for Plaintiff's job in March of 2003, a Citizens' representative stated that Plaintiff's job required six hours of sitting, one-half hour of standing, one-half hour of walking and one-half hour of squatting. It is clear from the record submitted by Citizens that Plaintiff's job requires prolonged sitting, yet Dr. Khaund, in his report of June, specifically states that Plaintiff should avoid prolonged sitting. Dr. Parisi never addresses this in his report, nor does he address the nature of her job duties and how she might be able to perform them, in his opinion. Dr. Parisi never saw a job description for Plaintiff's job and, apparently, he did not review the physical job evaluation prepared by Citizens prior to rendering his opinion. Dr. Parisi lacked all of the sufficient information necessary to

determine if Plaintiff was unable to work due to the severe degenerative disc disease, but the report fails to address Plaintiff's condition in relation to her job duties.

On the same day that Dr. Parisi submitted his report, Plaintiff submitted a Claimant Information Form and Activities Questionnaire to Liberty. (AR 00213-AR 00222). In that submission, Plaintiff described her job as consisting of 10-11 hour workdays. She had a variety of duties such as motivating staff, writing procedures, attending meetings and having an upbeat personality. (AR 00216). In addition, Plaintiff stated that she was unable to work due to "pain in my back that feels like a knife" and "shooting pains up the back of my head that stretches across my shoulders." (AR 00216). This contradicts Dr. Parisi's statement in his report that "the insured does not complain of significant pain down her upper extremities." (AR 00234). It does not appear that Dr. Parisi ever obtained a copy of Plaintiff's submission.

Pursuant to Citizens Short-Term Disability Plan, "Disability" is defined as "the Covered Person, as a result of injury or sickness, is unable to perform the Material and Substantial Duties of His Own Job." (AR 00052). Dr. Parisi did not know the material and substantial duties of Plaintiff's job, since he did not have a job description for her position, yet Citizens and Liberty relied solely on his representation to initially deny Plaintiff benefits after June 13, 2003. Dr. Parisi did not have Plaintiff's MRI, nor has he personally examined Plaintiff, yet he determines that her degenerative disc disease is not that severe and she is able to return to work. His recommendation completely ignores Dr. Khaund's recommendation ignores the fact that Plaintiff attempted to return to work in April, but was unable to perform her duties due to the pain in her neck. Citizens denial of Plaintiff's benefits based upon Dr. Parisi's mere conclusions, which were based upon an insufficient medical file, does not meet the standards of reasonable review as ERISA mandates.

c. CITIZENS AND LIBERTY'S DECISION TO DENY PLAINTIFF'S FIRST APPEAL WAS NOT REASONABLE, NOR SUPPORTED BY THE EVIDENCE SUBMITTED BY PLAINTIFF .

1. Dr. Holbrooks' Report of January 22, 2004.

After Plaintiff's first appeal was filed in January of 2004, Liberty referred her case to Dr. John Holbrook, a medical consultant for Liberty. On January 22, 2004, Dr. Holbrook submitted a report to Liberty based strictly on the case file, without examining the Plaintiff. Similar to Dr. Parisi's report, Dr. Holbrook forms an opinion on Plaintiff's condition that is not based upon a fair and reasonable review and is insufficient, since it fails to take into account all of the relevant information to Plaintiff's claim. Several problems with Dr. Holbrook's report are as follows:

- He states "there is mention of care and treatment by multiple physicians whose records are not available in our medical file for review."
- There are no medical reports from Dr. Gordon, Dr. Kyros, Dr. Shalvoy or Dr. Greenberg for his review.
- He defers to Dr. Parisi on diagnosis of cervical radiculitis and cervical degenerative joint disease.
- He can't comment on Plaintiff's treatment for depression.
- He states that it is unlikely that Plaintiff's level of dizziness is significant to cause an impairment such that she would be precluded from returning to work, but he provides no medical reasoning or explanation for his conclusion.
- The records reflecting the management of her thyroid status are not available for review. (AR 00188 – 00192).

Despite the lack of medical documentation in the file, Dr. Holbrook states that it is unlikely that her level of dizziness was significant enough to cause any impairment on her ability to work, yet he gives no basis for this opinion. (AR 00188). He does not address Dr. Friedman, Plaintiff's treating physician's report of November 20, 2003, which states that Plaintiff suffers from dizziness every day and can have up to two or three episodes a day. (AR 00170). He can apparently conclude that Plaintiff was able to return back to work after June 13, 2003 on the basis of the limited information before him. Throughout most of Dr. Holbrook's report, he states that he can't comment on one of Plaintiff's conditions or he does not have information relative to Plaintiff's position. Dr. Holbrook's report is insufficient

to provide the basis for denial of Plaintiff's benefits. Dr. Holbrook did not examine Plaintiff, nor does he point to any credible evidence to support his position that it is unlikely that Plaintiff's level of dizziness would preclude her from working.

2. Dr. Parisi's Further Review Dated February 12, 2004

At the request of Liberty, Dr. Parisi prepared an updated report on Maureen Beauvais' case. There is no indication that Dr. Parisi reviewed Plaintiff's MRI prior to writing this updated report, despite the fact that he repeatedly mentioned that the MRI was needed in his first report. Furthermore, there is no indication that he reviewed Plaintiff's statement submitted to Liberty on July 15, 2003 wherein she states that she had experienced pain in her neck and back, nor has he reviewed the job description for Plaintiff's position. Despite the continued lack of records, he states that his opinions regarding her cervical condition remain unchanged, since there is no new medical data to alter his position. (AR 00185 – AR 00186). Unfortunately, his first opinion is incorrect and unsubstantiated, since it fails to take into account the MRI results and the Plaintiff's own statement of pain in her back and neck. Despite the lack of proper information on which to base his opinion, Dr. Parisi does not alter his first opinion.

As a result of these reviews, Liberty sent a letter to Plaintiff on February 17, 2004 stating that her appeal has been forwarded to the Appeal Review Unit for further review. (AR 00183). The Appeal Review Consultant for Liberty sent a letter to Citizens on February 25, 2004 recommending that denial of Plaintiff's benefits beyond June 13, 2003 be maintained. The Analysis and Recommendation rely on statements about Plaintiff's condition which are not true. The report states that "while she began medication treatment for depression on May 30, 2003, there is no indication that she was impaired psychiatrically or continued to receive treatment for depression beyond that date." (AR 00182). In her letter to Liberty on January 4, 2004, Plaintiff stated with respect to her treatment for depression "I was then referred to William Kyros, M.D., 181 Centerville Road, Warwick, Rhode Island 02886, 401-965-7464. Dr. Kyros prescribed the anti-depressant that Dr.

Mallozzi had recommended. Dr. Kyros also indicated that he did not think my depression was unusual due to all that has happened over the past year. I am still seeing Dr. Kyros on a regular basis. My next appointment is scheduled for February 5th." (AR 00200). Apparently, the Appeal Review Consultant did not take into account for the report. Similar to all the reports presented by Liberty, this report fails to take into account all of Plaintiff's medical history and states that she is not receiving treatment for depression, when it is clear from Plaintiff's statement that she is. Furthermore, Plaintiff signed an authorization on July 15, 2003, permitting Liberty to obtain all medical records from her treating physicians and Social Security Disability. (AR 00102). Liberty could have obtained Dr. Kyros' records. Based on that incorrect report, Plaintiff was, again, denied short-term disability benefits after June 13, 2003. The denial of benefits based on these insufficient and incorrect reports is in violation of ERISA.

d. LIBERTY AND CITIZENS DENIAL OF PLAINTIFF'S SECOND APPEAL IS UNFOUNDED

After Citizens denied her first appeal, Plaintiff sent another detailed letter on April 15, 2004 to Citizens again appealing the denial of benefits and outlining her treatment with various physicians. (AR 00156 – AR 00160). Plaintiff correctly asserted that her medical conditions and supplemental medical documentation supported her appeal. As part of the second appeal, Liberty referred Plaintiff's file to Dr. Shlomo S. Mandel, M.D. of the MLS National Medical Evaluations Inc., who submitted a report to Liberty. (AR 00126 – AR 00132). Similar to the previous evaluation done by Liberty's consultants, Dr. Mandel's report is replete with problems.

He states that he reviewed a detailed job description for the position of "supervisor, lending activities". As discussed earlier, this is not the correct job description for Plaintiff's job, just a general description from the Department of Labor, which was not accurate for Plaintiff's job. In fact, the Vocational Manager who provided that job description stated that "if a claim determination was being considered on the basis of [that job description], the

Disability Case Manager should consider a referral for a complete Vocational Case Manager file review to determine if further investigation, including, but not limited to, a Labor Market Survey is needed." (AR 00258). Further investigation was not done, yet this job description was used to deny Plaintiff benefits.

Despite the fact that Ms. Beauvais and her treating physician repeatedly reported that she has limitations on her physical activities. Dr. Shlomo states "I feel that Ms. Beauvais could perform frequent sitting, standing and walking activities. She should also be able to perform carrying and lifting activities up to 20 pounds on a frequent basis (AR 00131)." There is no indication how he arrived at this decision, nor what medical information he used to arrive at the 20 pound number. This contradicts Dr. Khaund's restriction form report to Liberty in June of 2003 relative to Plaintiff's condition. (AR 00275). In that report, he stated that Plaintiff was unable to lift over 5 lbs.

Dr. Mandel states that there are no restrictions or limitations present for Plaintiff after June 13, 2003, even though he is including in his opinion her history of rotator cuff surgery in November of 2003.

Like Dr. Parisi, there is no indication that Dr. Mandel, a Board Certified Back and Spine Specialist, reviewed the MRI of Plaintiff's back from December of 2002. He states, "from my review of the medical record, there is no indication of musculo skeletal impairment. As recited above, Ms. Maureen Beauvais apparently had symptoms, which were temporarily aggrevated by positioning during a partial thyroidectomy surgery." (AR 00147-00148). Ms. Beauvais's symptoms continued after June 13, 2003. In Dr. Mandel's report, he fails to take into account the MRI of Plaintiff's back done in December of 2002. In fact, he does not even mention it. He completely ignores Dr. Khaund's recommendations and states that there is no functional impairment of Plaintiff, but he does not explain why. Dr. Mandel's report is just a conclusion without any supporting medical documentation.

Based upon Dr. Mandel's incorrect report of May 4, 2005, Liberty again recommended to Citizens that Plaintiff be denied benefits after June 13, 2003. Citizens

notified Plaintiff of the denial of her second appeal for short and long-term disability benefits by letter dated May 6, 2004.

e. THE DECISION TO DENY PLAINTIFF LONG-TERM DISABILITY BENEFITS IS INCORRECT.

In order to qualify for long-term disability, Plaintiff must qualify for the 180-day elimination period of partial or total disability as the policy mandates. (AR 0004-0008). All of the review done by Liberty consultants fail to account for all of Plaintiff's medical conditions or the evaluations and opinions are given without having the proper medical documentation regarding Plaintiff's condition. Plaintiff's elimination period expired on August 22, 2003. The Plaintiff was still treating with Dr. Khaund on August 6, 2003. In that report, he stated that she still has daily discomfort and stiffness in her neck. He does not believe that she can return to work in any capacity. (AR 00164). Dr. Khaund, who had the MRI results, and saw Plaintiff every 6-8 weeks never waivered in his assessment of Plaintiff's pain and her failure to return to work. If Liberty's consultants had the proper information before them, they would have agreed that Plaintiff was disabled through August 22, 2003, thereby entitling Plaintiff to be eligible for long-term disability benefits. Accordingly, similar to the denial of short-term disability benefits, the decision to deny long-term disability benefits is not reasonable.

f. THE DENIAL OF PLAINTIFF'S BENEFITS IS NOT REASONABLE BECAUSE IT IS BASED UPON SELECTIVE REVIEW OF MEDICAL EVIDENCE AND THERE IS NO CONTRADICTORY MEDICAL EVIDENCE TO DENY PLAINTIFF'S CLAIM.

There are several problems with the reviews conducted by Liberty as outlined above. The reviews also fail to meet the standards of a full and fair review of ERISA. Liberty did not have an independent medical examination performed on Plaintiff. Therefore, the only evidence that was evaluated was by Plaintiff's treating physicians. Dr. Khaund repeatedly stated that Plaintiff was unable to return to work. There is no evidence submitted by any treating physician that indicates that Plaintiff can return to work.

The United States Supreme Court has ruled that under ERISA, the plan administrators are not obligated to give any special deference to the opinion of treating physicians. Black & Decker Disability Plan vs. Nord, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed. 2d 1034 (2003). But, at the same time, the Court held that a plan administrator can't arbitrarily "refuse to credit a claimant's reliable evidence, including the opinions of the treating physician." Id. at 829. The Federal District Court in Maine has held that the Black & Decker case does "not stand for the proposition that an insurer may deny claims based only upon the unsupported conclusions of its employees. Giroux vs. Fortis Benefits Ins. Co., 353 F.Supp. 2d 149, 157 (D.Me. 2005) quoting Curtin vs. UNUM Life Ins. Co. of America, 298 F.Supp. 2d 149, 157 (D.Me. 2004). The Maine District Court further held that if there is no medical evidence contrary to the treating physicians' opinion, an insurer is not permitted to simply ignore the treating physicians' opinion. Id.

In this case, in addition to the fact that the consultants, hired by Liberty, performed an inadequate review of the record, there is no contrary evidence to contradict the opinion of Dr. Khaund that Plaintiff is unable to return to work. The opinions and the conclusions of the consultants for Liberty are unsupported and unsubstantiated by any medical documentation.

While there is no requirement under ERISA that insurers obtain independent medical evaluations, it is a factor to be considered by this Court. DiPietro vs. Prudential Insurance Company of America, 2004 U.S. District Lexis 5004. citing Crespo vs. UNUM Life Insurance Company of America, 294 F.Supp. 2d 980, 995 (N.D. Ill. 2003). In DiPietro, the Court held that the lack of an independent medical examination ("IME") is an indication of whether or not the claimant received a thorough review. Id. In the absence of contradictory medical evidence or an IME, the First Circuit has held that in certain cases, the insurer's decision will be deemed arbitrary and capricious. See, Cook vs. Liberty Life Assurance of Boston, 320 F.3d 11 (1st Cir. 2003).

In this case, Liberty and Citizens failed to provide any contradictory evidence to repudiate Dr. Khaund's opinion. They chose not to have an IME done to Plaintiff. Without some basis for their conclusion that Plaintiff is not disabled, Citizens' decision should be overturned as not being reasonable.

g. PLAINTIFF'S SOCIAL SECURITY DISABILITY AWARD IS A FACTOR TO BE CONSIDERED BY THIS COURT.

The Social Security Administration awarded Plaintiff disability benefits for the treatment of the same conditions which support her claim for disability with Citizens and Liberty. This award is not binding upon the decision of Liberty and Citizens. Pari-Fasano vs. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 420 (1st. Cir. 2000). But, the fact that Plaintiff was awarded the benefits is a factor to be considered. See, DiPietro vs. Prudential Insurance Company of America and Pari-Fasano. Plaintiff's award of Social Security benefits is retroactive to February 20, 2003, when she first became disabled. Unfortunately, Plaintiff was not notified of their decision until June 9, 2004, after Liberty had denied her second appeal. This should have been a factor that Liberty considered before making its recommendation to Citizens to deny Plaintiff's benefits.

**5. CONCLUSION**

Based upon Liberty's and Citizens' failure to conduct a full and fair review of Plaintiff's file because of (1) inadequate information; and (2) unsupported conclusions, Plaintiff respectfully requests that this Honorable Court enter summary judgment, for her, against Liberty and Citizens. Plaintiff further requests that she be awarded benefits retroactive to the date of termination of benefits on June 14, 2003, with prejudgment interest and attorneys' fees. When the insurer's denial of benefits is based upon "the arbitrary and capricious conduct, [the insured] would have continued to receive benefits 'or where' there [was] no evidence in the record to support a termination or denial of benefits,'"...then retroactive reinstatement is appropriate. Cook vs. Liberty Life Assurance of Boston, 320 F.3d 11 quoting Quinn vs. Blue Cross & Blue Shield Assn., 161 F.3d 472, 477

(7th Cir. 1998). Furthermore, prejudgment interest is available while not mandated in ERISA cases. Coltrill vs. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 223 (1st Cir. 1996). The purpose of prejudgment interest is to "ensure that the insured party is fully compensated for its loss." Cook vs. Liberty Life Assurance of Boston, 320 F.3d at 13 quoting City of Milwaukee vs. Clement Division, Nat. Gypsum Co., 515 U.S. 189, 195, 132 L.Ed 2d 148, 115 S.Ct. 2091 (1995).

The award of attorneys' fees in ERISA cases is in the Court's discretion. The Court generally considers the following five factors:

> (1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the opposing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions.

Plaintiff respectfully represents that all of these factors are present in this case warranting the award of attorneys' fees.

If the Court does not decide that an award of retroactive benefits is warranted, then at a minimum, Plaintiff's case should be remanded to Liberty for a full and fair review and Plaintiff should be given an opportunity to present any and all additional relevant evidence to support her claim.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant her prayer for summary judgment and such other and further relief as it sees fit to award.

MAUREEN BEAUVAIS
By Her Attorney,

Monica Horan

MONICA HORAN (#5227)
393 Armistice Boulevard
P.O. Box A
Pawtucket, RI 02861
(401) 725-7368
(401) 726-2460 (facsimile)

**United States District Court**
**for the District of Rhode Island**

| | | |
|---|---|---|
| MAUREEN L. BEAUVAIS | : | |
| | : | |
| v. | : | Case No.: 04-403T |
| | : | |
| CITIZENS FINANCIAL GROUP, INC. | : | |
| And LIBERTY LIFE ASSURANCE | : | |
| COMPANY OF BOSTON | : | |

## TABLE OF AUTHORITIES

**Page**

Leahy vs. Raytheon Co.,
315 F.3d 11, 17-18 (1st Cir. 2002) ........ 7

Firestone Tire & Rubber Co. vs. Bruch,
489 U.S. 101, 103 L.Ed. 2d 80, 109 S.Ct. 948 (1989) ........ 7, 8

Doe vs. Traveler's Ins. Co.,
167 F.3d 53, 57 (1st Cir. 1999) ........ 8

Black & Decker Disability Plan vs. Nord,
538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed. 2d 1034 (2003) ........ 16

Giroux vs. Fortis Benefits Ins. Co.,
353 F.Supp. 2d 149, 157 (D.Me 2004) ........ 16

Curtin vs. UNUM Life Ins. Co. of America,
298 F.Supp. 2d 149, 157 (D.Me 2004) ........ 16

DiPietro vs. Prudential Insurance Company of America,
2004 U.S. Dist. Lexis 5004 ........ 16, 17

Crespo vs. UNUM Life Ins. Co. of America,
294 F.Supp. 2d 980, 995 (N.D. Ill. 2003) ........ 16

Cook vs. Liberty Life Assurance of Boston,
320 F.3d 11 (1st Cir. 2003) ........ 16, 17, 18

Pari-Fasano vs. ITT Hartford Life & Accident Ins. Co.,
230 F.3d 415 (1st Cir. 2000) ........ 8, 17

Quinn vs. Blue Cross & Blue Shield Assn.,
161 F.3d 472, 477 (1st Cir. 1998) ........ 17

Coltrill vs. Sparrow, Johnson & Ursillo Inc.,
100 F.3d 220, 223 (1st Cir. 1996) ........ 18

**Statutes**

29 U.S.C. §1132(a)(1)(B) ........ 1