# United States District Court
# for the District of Rhode Island

MAUREEN L. BEAUVAIS :
:
v. : Case No.: 04-403T
:
CITIZENS FINANCIAL GROUP, INC. :
And LIBERTY LIFE ASSURANCE :
COMPANY OF BOSTON :

## STATEMENT OF UNDISPUTED FACTS

In support of her Motion for Summary Judgment, Plaintiff Maureen Beauvais submits the following statement of undisputed material facts:

1. Plaintiff, Maureen Beauvais, was employed at Citizens as an Assistant Vice President of the Loan Processing Department. (Plaintiff's Complaint ¶ 4)

2. As part of her employment, Plaintiff was eligible to participate in Citizens Short Term Disability Plan. This Plan is self-funded by Citizens and Citizens is the Plan Administrator. Liberty is the Claims Administrator of the Plan. (AR 00044-77)

3. Citizens also offered its employees a Long Term Disability Plan, which is insured by Liberty. Liberty is responsible for the payment of benefits under the Plan and has the sole discretion to construe the terms of the policy and to determine benefit eligibility. (AR 00037)

4. In November of 2002, Plaintiff discovered a swelling on her clavicle bone. Her primary physician referred her to Dr. Khaund, an orthopedic surgeon. (AR 00156)

5. In December of 2002, Dr. Khaund ordered an MRI for Plaintiff, which revealed that she suffered severe degenerative disc disease on C5-6 of her spine, and that Plaintiff had a nodule on her thyroid. (AR 00156)

6. Plaintiff was referred to Dr. Greenberg for her thyroid nodule. Dr. Greenberg scheduled surgery for February 23, 2003. (AR 00199)

7. Plaintiff began receiving short term disability benefits from the Citizens Plan on February 25, 2003. (Plaintiff's Complaint ¶ 6).
8. Pursuant to the Citizens Short Term Disability Plan, "disability" is defined as:

> "unable to perform all of the material and substantial duties of your occupation in an Active Employment basis because of injury or sickness". (AR 00052).

9. Pursuant to the Citizens Long Term Disability Plan, it provides for a 180 day elimination period in order to be eligible for long term disability. The elimination period is defined as:

> "a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The elimination period is shown on the schedule of Benefits and begin on the first day of Disability." (AR 00004-00008).

10. In March of 2003, Liberty requested that Citizens complete a job evaluation and a job description for Plaintiff's position. Liberty received the completed job evaluation form, but there is no evidence that a job description was provided. (AR 00320-00325)

11. Plaintiff continued to treat with Dr. Khaund for her severe degenerative disc disease after her thyroid surgery.

12. Dr. Khaund submitted his office notes from his visit with Plaintiff on March 5, 2003 and a completed Restrictions form listing Plaintiff's limitations on March 12, 2003. In his office notes, Dr. Khaund indicated that Plaintiff suffered from cervical degenerative disc disease and she was to begin physical therapy. He recommended that she remain out of work for an additional 3-4 weeks in order to rest her neck. (AR 00315-00316)

13. On April 7, 2003, Plaintiff, at Dr. Khaund's recommendation, attempted to return back to work for a few hours a day. Plaintiff was only able to work a reduced hour schedule for a few days. Her neck caused her so much pain that she had to stop working. (AR 00293, 00309, 00306)

14. At the request of Liberty, Dr. Khaund submitted updated office notes and a functional capacities form for Plaintiff on April 18, 2003. In his reports he again refers to Plaintiff's MRI results of December of 2002. He further indicates that Plaintiff is limited in her daily activities and is only able to perform most of the listed activities about one-third of the time. (AR 00306-00307)

15. In May of 2003, Dr. Khaund again submitted a completed restrictions form and his office notes from May 2, 2003. He indicated that Plaintiff's condition was unchanged from his submission of April 18, 2003. In his office notes, Dr. Khaund indicated that any sitting for long periods of time was detrimental to Plaintiff. He was "very skeptical" when, if ever, Plaintiff would be able to resume her employment. (AR 00293)

16. On May 30, 2003, Plaintiff treated with her primary physician, Dr. Mallozzi, for vertigo and depression, which she had experienced with greater frequency since her surgery on February 23, 2003. (AR 00232)

17. On June 11, 2003, Dr. Khaund treated Plaintiff on a follow-up visit at his office. He submitted his office notes and a completed restrictions form to Liberty. During the June 2003 office visit, Dr. Khaund noted the following:

    - The patient denies persistent numbness or tingling in the upper extremities, but they do occur intermittently.
    - She's tried using a collar while working on her computer in an effort to see if she can try to return back to work. This is very uncomfortable for her.
    - She suffers from mechanical back and neck pain.
    - He recommends that she stay out of work for the next eight weeks. (AR 00162-AR 00163)

    In his restrictions form submitted to Liberty, Dr. Khaund notes the following:

    - Plaintiff to avoid computer work, prolonged sitting and standing.
    - Limited ROM in neck.
    - No lifting over 5 lbs.
    - Her response to the treatment plan has been "mild". (AR 00275).

18. In June 2003, Plaintiff requested buy-up coverage under the Long-Term Disability Policy (AR 00278–AR 00279).

19. On July 3, 4 and 7 of 2003, MJM Investigators, at Liberty's request, conducted surveillance of Plaintiff's activities at her home. (AR 00237–AR 00246). The investigation did not reveal anything that was inconsistent with Plaintiff's claim that she was disabled and unable to work.

20. On July 11, 2003, Liberty requested and received an occupational description from the Department of Labor for the position of Supervisor, Lending Activities. The Vocational Case Manager notes that the claim file and industry in which this employee works have not been reviewed by a Liberty Mutual Vocational Case Manager. "If a claim determination is being considered on the basis of this information, Disability Case Manager should consider a referral for a complete Vocational Case Manager file review and to determine if further investigation, including, but not limited to, a Labor Market Survey is needed." (AR 00258).

21. During its review of Plaintiff's claim for short-term disability benefits, Liberty referred her case to Dr. Anthony Parisi, who is a consulting physician for Liberty Mutual. In a report dated July 15, 2003, Dr. Parisi opines that an additional 8 weeks out of work for Plaintiff is not supported by the file.

22. Plaintiff submitted a Claimant Information Form and Activities Questionnaire to Liberty. (AR 00213-AR 00222). In that submission, Plaintiff described her job as consisting of 10-11 hour workdays. She had a variety of duties such as motivating staff, writing procedures, attending meetings and having an upbeat personality. (AR 00216). In addition, Plaintiff stated that she was unable to work due to "pain in my back that feels like a knife" and "shooting pains up the back of my head that stretches across my shoulders." (AR 00216).

23. On July 29, 2003, Plaintiff received a letter from Liberty stating that her claim for short term benefits would be closed as of June 14, 2003. According to Liberty because she no longer met the definition of "disability" under their policy. (AR 00228).

24. Also on July 29, 2003, Liberty informed Plaintiff by letter that she was denied long term disability coverage because she did not satisfy the 180 day elimination period. (AR 00223-00227).

25. On or about January 14, 2004, Plaintiff filed a written request to appeal the denial of her short term disability benefits after June 13, 2003 and her long term disability benefits. Plaintiff submitted a three-page letter wherein she detailed her treatment and diagnosis to date. It also listed each treating physician and his/her address.

26. Liberty had her consent to obtain any of these physicians' records, or any of her documentation sent in support of her claim for Social Security Disability Benefits, since she had signed an Authorization for Liberty in July of 2003. (AR 00199-AR 00202).

27. Prior to her request for an appeal, Plaintiff had continued to submit medical documentation to Liberty to support her claim for benefits. On August 6, 2003, Plaintiff met with Dr. Khaund to follow up on her treatment. During that visit, Dr. Khaund noted the following:

- Her vertigo is not resolved.
- She developed cystic swelling in her brain.
- She still has daily discomfort and stiffness in her neck.
- He does not believe that she can return to work in any capacity.
- She has a torn left rotator cuff. (AR 00164-AR 00165).

28. In September of 2003, Plaintiff filed for social security disability benefits. (Plaintiff's Complaint ¶ 10)

29. On November 7, 2003, Plaintiff had surgery to repair her torn left rotator cuff. (AR 00166).

30. On November 20, 2003, she consulted with Dr. Friedman for episodes of dizziness. In Dr. Friedman's report, he notes that Plaintiff has episodes of dizziness "pretty much daily". "She can have two or even three episodes a day or as few as one and occasionally might miss a day here and there when she is free of them". (AR 00170). She reported that the frequency of her dizziness increased after her thyroidectomy. Id. Dr. Friedman diagnosed Plaintiff with a fixed peripheral lesion on the left brain. He stated "it became clear that she has learned to restrain her head movements and finds that environments in which visual clues are orientationally ambiguous produce her symptoms as well. (AR 00203).

31. On January 22, 2004, Liberty received a report from John Holbrook, a medical consultant to Liberty relative to Plaintiff's request for disability benefits after June 13, 2003. In his report he states, "there is mention of care and treatment by multiple physicians whose records are not available in our medical file for review. There are no medical reports from Dr. Gordon, Dr. Kyros, Dr. Shalvoy or Dr. Greenberg for his review. He defers to Dr. Parisi on diagnosis of cervical radiculitis and cervical degenerative joint disease. He can't comment on Plaintiff's treatment for depression. He states that it is unlikely that Plaintiff's level of dizziness is significant to cause an impairment such that she would be precluded from returning to work, but he provides no medical reasoning or explanation for his conclusion. The records reflecting the management of her thyroid status are not available for review." (AR 00188 - 00192).

32. On February 24, 2004, Dr. Parisi submitted an updated report to Liberty relative to Plaintiff's claim. (AR 00185)

33. On February 17, 2004, Liberty informed Plaintiff that her claim was referred to the Appeal Review Unit for further review. (AR 00183)

34. On February 25, 2004, Liberty sent a letter to Citizens recommending the denial of benefits to Plaintiff beyond June 13, 2003. (AR 00180) Liberty has an analysis and recommendation for the decision in their file. (AR 00175-177). The report states that "while she began medication treatment for depression on May 30, 2003, there is no indication that she was impaired psychiatrically or continued to receive treatment for depression beyond that date." (AR 00182). In her letter to Liberty on January 4, 2004, Plaintiff stated with respect to her treatment for depression "I was then referred to William Kyros, M.D., 181 Centerville Road, Warwick, Rhode Island 02886, 401-965-7464. Dr. Kyros prescribed the anti-depressant that Dr. Mallozzi had recommended. Dr. Kyros also indicated that he did not think my depression was unusual due to all that has happened over the past year. I am still seeing Dr. Kyros on a regular basis. My next appointment is scheduled for February 5th." (AR 00200).

35. On April 5, 2004, Plaintiff filed a second appeal from the denial of her benefits with Citizens. (AR 00156-160)

36. On May 4, 2004, Dr. Shlomo Mandel, a Liberty Consultant, provided Liberty with a report relative to Plaintiff's claim. (AR 00143-149). In his report he states, "I feel that Ms. Beauvais could perform frequent sitting, standing and walking activities. She should also be able to perform carrying and lifting activities up to 20 pounds on a frequent basis. (AR 00131)." Dr. Mandel states that there are no restrictions or limitations present for Plaintiff after June 13, 2003, even though he is including in his opinion her history of rotator cuff surgery in November of 2003.

37. On May 5, 2004, Liberty again recommended to Citizens that the denial of benefits for Plaintiff be maintained after June 13, 2003. (AR 00133)

38. Citizens notified Plaintiff of its denial of her second appeal by letter dated May 6, 2004.

39. On June 9, 2004, Plaintiff was notified by the Social Security Administration that she was entitled to monthly social security benefits commencing august of 2003. Social Security determined that Plaintiff

became disabled pursuant to their rules on February 20, 2003. (Plaintiff's Complaint ¶ 16)

MAUREEN BEAUVAIS
By Her Attorney,

MONICA HORAN (#5227)
393 Armistice Boulevard
P.O. Box A
Pawtucket, RI 02861
(401) 725-7368
(401) 726-2460 (facsimile)

## CERTIFICATION

I, the undersigned, do hereby certify that I hand-delivered a copy of the within Motion for Summary Judgment to Joseph D. Whelan, Esquire, Hinckley, Allen & Snyder, LLP, 1500 Fleet Center, Providence, Rhode Island 02903; Anthony J. DiOrio, Esquire, Jackson Lewis LLP, 127 Dorrance Street, Providence, Rhode Island 02903; and Richard W. Paterniti, Esquire (pro hac vice), Jackson Lewis LLP, 75 Park Plaza, Boston, Massachusetts 02116 on this 15th day of July, 2005.